MICHIGAN & OHIO PLASTER COMPANY v. GEORGE H. WHITE AND ADOLPH LEITELT, ASSIGNEE, ETC.

*Record—Bill of interpleader—Practice—Intervening strangers—Collusion—Costs—Interest.*

An appellate court is bound by the record, and cannot take notice of allegations made by counsel on the hearing and not appearing of record.

A bill of interpleader lies only where complainant is, in good faith and without collusion or fault, so placed that he cannot safely decide between adverse claimants of a fund or right under his control. It is only. upheld upon full merits.

Where it is determined on a bill of interpleader that one of only two conflicting claimants has no claim, or where the bill is taken as confessed by one, it follows that the fund indisputably belongs to the other.

A bill of interpleader was filed against two persons, one of whom disclaimed any right to the fund in dispute. A stranger was afterward admitted, on petition, to contest the interest of the remaining defendant, in which he claimed a partnership right. *Held*, that there was no practice which would allow him to get into the cause by petition; that bringing him in without an amendment to the bill put nothing in issue; that his claim was not one against which the bill was filed, and that the bill could not be amended so as to reach him, because it was filed to guard against known, and not unknown, claims.

Any improper delay after answer to a bill of interpleader, in preparing the cause for hearing, will authorize the party who has answered to apply for the money, if there is any fraudulent purpose or collusion.

A complainant in a bill of interpleader may be allowed a lien on the fund if he has acted honestly and promptly; and the prevailing defendant will generally have to look to the other defendant for his costs. But if complainant has improperly delayed the case by collusive conduct, costs may be granted against him in defendant's favor.

It is a suspicious circumstance if after one of only two defendants to a bill of interpleader has disclaimed, complainant seeks for delay and complainant's agent petitions in behalf of a stranger for leave to

contest the interest of the other defendant; and an order of court
that the fund remain in the register's hands, and that defendant and
petitioner interplead, is irregular.

Interest is not stopped by a bill of interpleader improperly filed.

Appeal from Kent. Submitted April 29. Decided June 11.

BILL OF INTERPLEADER. Complainant appeals. Dismissed.

*Norris & Uhl* for complainant.

*Blair, Kingsley & Kleinhans* for defendant White.
Where intervention on petition is allowed, the intervenor
must come in before the trial: *Van Bibber v. Geer* 12 Tex.
15; *Gaines v. Page* 15 La. Ann. 109; *Hocker v. Kelley* 14
Cal. 165; interpleader will not lie where one defendant
makes no claim, and the other could recover in an action:
*Crawshay v. Thornton* 2 Myl. & C. 1.

*Lyman D. Follett* for petitioner Rathbone.

CAMPBELL, J. Complainant, on the 5th of September, 1876,
filed a bill of interpleader against defendants, averring that
Leitelt, as assignee in bankruptcy of the Grand River Valley
Plaster Company, and White set up conflicting claims to
$1540 in money in complainant's hands, being the proceeds
of the sale of certain plaster manufactured at the mill of the
bankrupt company and delivered to complainant. The bill
avers that White claimed it as plaster ground for him, and
that Leitelt claimed White bought the rough plaster on
an execution against the bankrupt, which was invalid as
against the assignee.

Complainant was a corporation organized by the union of
several plaster manufacturers for the purpose of keeping con-
trol of the market by selling all their product so far as it was
to be marketed—each member furnishing a certain percent-
age of the plaster, and agreeing to sell no more, except among
themselves. Complainant was to pay a certain price in the
first instance, and divide the profits ratably according to the
proportions fixed.

The bill avers that after the bankruptcy of the Grand River

Valley Plaster Company Leitelt ran its mill and assumed its place in the arrangement with complainant, and up to June 13, 1876, had delivered the quota, amounting to 1727 tons; that complainant had paid over a considerable sum named to him, but that White claimed 450 tons of this to be his property, and to have been ground for him by Leitelt under a special bargain; while Leitelt claimed it as his under assertion that the execution sale before mentioned was in fraud of the bankrupt law.

On these statements the complainant offered to pay the $1540 into court, and sought to compel the defendants to interplead. The money was paid in, and both parties were enjoined from legal proceedings.

White appeared and answered October 23, 1876, and complainant filed a general replication. The answer in substance denied that Leitelt delivered White's plaster, or that White ever claimed any plaster delivered by Leitelt, and denied that Leitelt set up any adverse claim to White's property. It avers that Leitelt ground the plaster for White and White delivered it to complainant and was credited with it himself, and his rights recognized by complainant. There is a full denial of any conflict, and an averment of suit brought and pending in favor of White against complainant for the money. He admits a refusal to indemnify complainant, for the reason that there was no adverse claim set up, and offers to accept the money and discontinue.

Leitelt appeared on the 9th of October, 1876, and the time for answering was extended until November 18. On the 7th of December, 1876, an order *pro confesso* was entered against Leitelt, embodying an order of reference to take proof of the material facts and circumstances charged in the bill.

As we are bound by the record, we can take no notice of various allegations and counter allegations made by counsel on the hearing, and not appearing of record.

Nothing further appears to have been done until January 29, 1878, when complainant's and Leitelt's solicitors stipulated to set aside Leitelt's default, without costs to either party, and to let him file a disclaimer. On the next day Leitelt

filed his disclaimer under oath, denying that he had ever owned or claimed any interest in the matters in dispute.

No testimony having been taken the cause was for argument at the May term, 1878, but during that term, in August, 1878, complainant's solicitors, on the claim that the disclaimer was broader than they had supposed, asked to have it restricted to the date of filing, or else to have leave to reply. Leave to reply was given, and replication was filed August 31, 1878. On the 10th of October, 1878, an *ex parte* order was made to take testimony within sixty days.

On the 29th of November, 1878, which was the last day on which notice to take testimony could be given, notice was given to take it on December 9, which was the last of the sixty days. On that day no witness had been examined, and on a showing that one witness out of three had informed complainant's counsel it would be a damage to him to be compelled to attend, and that he had thereupon been assured another day would be fixed, the time was extended by an *ex parte* order sixty days longer. A petition was then filed on White's behalf remonstrating against the delay, and asking a reduction of time, and a stipulation was made to put the case on the docket for the then December term, and close the proofs by February 5, 1879.

On the 28th of December, 1878, one Amos Rathbone filed a petition for leave to intervene and contest White's interest, in which he claimed a right as partner. This petition was sworn to December 10th, and the solicitor who presented it had on the previous day made application, as complainant's agent, for the extension of time for proofs. There is nothing to show that this petition of Amos Rathbone was ever brought to White's attention until the final hearing. Leave to file it was given *ex parte* December 12; but the service was not required to be made until nine days before the petition itself should be brought on for hearing, which was not required to be until the final hearing of the cause.

The case was not heard until November, 1879, and on the 26th day of November a decree was made to the following effect: *first*, that the bill was properly filed; *second*, that

Leitelt had no claim on the money, but that it should remain in the register's hands free from any such claim, and that no costs should be awarded against him; *third*, that Rathbone was thereby made a party defendant and allowed to interplead for one-half of the money; *fourth*, that White and Rathbone interplead, and that pleadings be filed accordingly; *fifth*, that complainant recover costs out of the fund; *sixth*, that a copy of the decree be served on White or his solicitors.

White appeals from this decree.

It is impossible to sustain such a decree on a bill of interpleader. Such a bill can only be filed when a complainant is in good faith and without collusion or fault, placed in a condition where it is impossible to decide safely between adverse claimants of the same fund or right. In order to prevent collusion the rules are applied strictly, and such a bill is not upheld unless upon full merits: *Bedell v. Hoffman* 2 Paige 199; *Badeau v. Rogers* id. 209. Laying aside for the present all reference to the actual merits of the controversy, it is manifest that when one of the only two conflicting claimants referred to in the bill is finally determined to have no claim, it must follow as a matter of course that the fund belongs to the other. The claim, whatever it may be, of Rathbone, is not a claim against which the bill was filed, or which in any way appears to have stood in the way of complainant paying over the money to any one. Bringing him into the case without an amendment of the bill puts nothing in issue, and it is difficult to conceive how a bill of interpleader could be so amended as to reach him, because the only excuse for filing it is to guard against known and not unknown claims. There is no practice which allows a stranger to get himself into a cause by petition. Apart, therefore, from all other considerations, the retention of the fund or any part of it after it was found there was no contest among the original defendants, could not be justified under a bill of interpleader properly brought.

But, inasmuch as Rathbone is represented by the same solicitor who appeared for complainant in obtaining some delays in the presentation of the cause, this provision in the

decree must be regarded as irregular and censurable. It resembles in this respect the case of *Dungey v. Angove* 2 Ves. Jr. 304, where an application to have the money, under similar circumstances, retained to answer some purpose connected with another litigation, induced Lord Rosslyn to direct an inquiry into the collusion, which resulted in serious consequences to the parties concerned. It is impossible to read this record without becoming satisfied that Mr. Rathbone was not introduced into it for any legitimate purpose.

It becomes necessary, however, to look into the entire record to determine how far the suit was properly begun, and what equities appear bearing on the right of the various parties to interest and costs.

The bill on its face is regular. White, while denying the fact of any conflict of claims, offered by his answer to take the money. At that time there had been no considerable expense incurred.

When the bill was taken as confessed as against Leitelt, it amounted to an admission that he had no claim on the fund, and White became thereby at once entitled to it : *Badeau v. Rogers* 2 Paige 209 ; *Aymer v. Gault* id. 284 ; *Stevenson v. Anderson* 2 Ves. & B. 412 ; *Martinius v. Helmuth* id. 412 (n). Any improper delay after an answer in preparing the cause for hearing will authorize an application for the money by the party who has answered, if there is any fraudulent purpose or collusion : *Hyde v. Warren* 19 Ves. 322 ; 2 Supp. to Vesey Jr. 316, 458. The only question open after Leitelt's default which concerned White or complainant was as to costs, and as to their lien on the fund. A complainant who has acted honestly and promptly may be allowed a lien on the fund, and the prevailing defendant will generally have to look to the other defendant for his costs. But this must depend on the facts, and if complainant has filed his bill improperly, or has conducted the case unfairly, the result will be different. See previous cases and *Dunlop v. Hubbard* 19 Ves. 205 and note ; 2 Supplement to Ves. Jr. 447.

Neither Leitelt nor White can be properly regarded as responsible for any delays. And upon the issues made by

the answer of White, and the disclaimer of Leitelt, we think the testimony preponderates in favor of Leitelt having done nothing at any time before or after suit to authorize the complainant to refuse payment to White and file the bill. We think further that the course of dealing shown by the books of complainant, whereby White was credited with the plaster in controversy, would have justified White in claiming that there was no ground for an interpleader, even if Leitelt had made adverse claims. But no such claim was set up.

The record shows that White desired the case to be speeded, and that Leitelt regarded himself as having no interest in it. The great and unreasonable delays, coupled with the peculiar way in which Rathbone's name became involved, would have made it unjust to give complainant costs out of the fund, even had there been any foundation for the bill originally.

But on the testimony there was no proper excuse or reason for filing it. The decree must therefore be reversed with costs of both courts in favor of White against complainant. White is at liberty to prosecute his suit at law on the claim against complainant, and to withdraw the fund from court, crediting as of the date of this decree, so much as remains of it over and above his costs aforesaid, as a payment on the claim. The bill having been improperly filed will not stop interest, and must stand dismissed.

The other Justices concurred.