VOGLE *v.* UNION CENTRAL LIFE-INSURANCE CO.

1. INTERPLEADER—GROUNDS.

A party is not entitled to maintain a bill of interpleader unless it fairly appears that, without his fault, he is placed in a position where it is impossible to decide safely between adverse claimants.

2. SAME—LIFE INSURANCE—PROCEEDS OF POLICY.

A life-insurance policy expressly gave the company the right to withhold from the assured or his assignees the amount of any indebtedness to the company and at the time of its issuance the assured borrowed a sum equal to the face of the policy and secured the same and a part of the premiums on the policy by mortgage on real estate, the policy referring to the mortgage.  Subsequently, complainant bought the real estate subject to the mortgage, took an assignment of the policy, and paid the premiums and the interest on the loan on assurances from the company that the policy on maturity would pay the principal of the loan.  On a bill by complainant to compel the company to apply the proceeds of the policy in payment of the mortgage debt, *held*, that defendant was not entitled to require complainant to interplead, a third person also claiming the proceeds of the policy by assignment from assured, the equities appearing to be with complainant.

Appeal from Cass; Des Voignes, J. Submitted November 15, 1906. (Docket No. 174.) Decided March 5, 1907.

Bill by Mary E. Vogle, administratrix of the estate of William H. Vogle, deceased, against the Union Central Life-Insurance Company to require the application of the proceeds of a policy to the payment of a mortgage debt. Defendant filed an answer, asking that complainant be required to interplead. From a decree denying the prayer for an interpleader, and granting the prayer of the original bill, defendant appeals. Affirmed.

On or about July 1, 1891, one Henry Shriner borrowed of the defendant $3,500, and, at the same time insured his life in the defendant company for that amount, securing both the money borrowed and $1,537.20 of the premiums on the policy by a mortgage upon certain real estate, executed by himself and his wife. The real estate mortgaged was worth about $5,200. December 30, 1893, William H. Vogle, the husband of complainant, purchased this land except a small piece worth about $200, and, it is averred in the original bill, took an assignment of the policy, at once notified the defendant thereof, and thereafter all the premiums were paid by Vogle during his lifetime, and by Mrs. Vogle after his death. Vogle died in March, 1897, and thereafter the defendant sent the premium notes to the bank at Cassopolis for collection, and notified Mrs. Vogle to pay them, and asked the bank to also notify her. The mortgage matured 10 years after its date and the policy 15; so that at the time the mortgage matured the policy was not available. Some months before the mortgage matured Mrs. Vogle began writing the company concerning both the mortgage and the policy. Under date of July 27, 1900, after she had paid the last premium note on policy, she is informed that the company holds the policy under an assignment as additional security, and that any other assignment is subject

to this assignment to the company. August 27, 1900, they write her that five more premiums are to be paid before the policy matures, but that the mortgage will mature in 1901.

"With reference to the dividend, would say that the dividend has gone to the credit of the policy, and we do not see how in any manner you will be caused to lose by it. We understand you have a creditor's interest in the policy, and we presume, therefore, that you will be entitled to receive such sums of money as you have invested in it with interest."

May 3, 1901, they write:

"This policy was made payable to the insured, but subsequently the company was notified of assignment January 1, 1894, to William H. Vogle, and June 21, 1900, to Cora B. Hoover. The premiums upon this policy have been paid in full to June 30, 1901. This policy of insurance will mature as an endowment June 30, 1906, providing the premiums not yet matured are promptly paid. The mortgage loan will mature July 2, 1901.

"Now, if you expect your interest in the life-insurance policy to pay off the mortgage debt it will of course be necessary for you to arrange for an extension of the mortgage loan until June 30, 1906, the date upon which the policy matures."

May 10, 1901, they write:

"I regret exceedingly that you have never had until my last letter the information desired relative to the Henry Shriner business relations with this company. There is no possible excuse for your not having just exactly this information. Your letters heretofore must have been misunderstood. * * *

"If now you have the money in hand to pay the $3,500 loan of July 2, 1891, it is, of course, absurd for you not to apply it to the payment of the same and stop the interest; but if your only resource for the payment of this debt is the life insurance, it will of course be necessary for you to pay interest on the $3,500 until the life insurance matures.

"Now, if it is agreeable to you, I will make the rate of interest on the $3,500 loan from the maturity of the note, July 2, 1901, 6 per cent., will make the extension for the

term of 10 years, and will give you the privilege of partial payments in any amount at any time not to exceed one-fifth of the principal in any one year. This will enable you to apply your savings right to this principal debt thus reducing the debt, and I will make you a corresponding rebate of interest each year for payments on account of the same. If this is agreeable, kindly indicate it, and I will send you the proper papers for execution.

"Now, you refer to the assignment of the Shriner policy. You did not understand me. I stated that the company had received notice of the assignment to William H. Vogle January 1, 1894, and to Cora B. Hoover June 21, 1900. I am not aware of the relationship of these parties, whether their interests are inimical or not.

"The company will pay this policy at maturity if the premiums are kept fully paid and the contract otherwise carried out, upon proper receipt by the parties interested. If you are the real owner of the policy there ought to be no trouble in your receiving the full proceeds of the same. I have no reason to doubt but that the policy was properly transferred."

May 25, 1901, they write:

"*Dear Madam:* Permit me in reply to your favor of the 20th inst. as follows:

"1. Policy No. 83,514, Henry Shriner, June 30, 1891, matures and is payable 15 years from its date.

"2. The cash proceeds of the policy at the end of 15 years is $3,500.

"3. The mortgage note is also $3,500. If the interest is paid up to June 30, 1906, the proceeds of the policy will pay the loan.

"4. In the event of death of Shriner prior to the end of 15 years the amount of $1,500 is payable in cash if there are no outstanding obligations on account of premiums. If the interest on the mortgage is paid up to the date upon which the insurance contract is payable by death it will pay the mortgage principal. *   *   *"

June 21, 1901, they write concerning extension, and finally the matter was arranged by complainant giving the company five notes for the annual interest on the $3,500 at six per cent., so as to extend the maturity of the mortgage from year to year until the policy should mature, either by the death of Shriner or by its terms.

Shriner died May 9, 1905, and complainant made satisfactory proofs thereof and of her interests.

The policy contains the following provisions: ·

"And the said company does hereby promise and agree to pay the amount of said insurance at its office in the city of Cincinnati, to said insured, on the 30th day of June, A. D. 1906; or should the said insured die previously and while this policy is in force then within sixty days after due notice and proof of the death of the said insured, the company will pay the amount of said insurance to the executors, administrators or assigns of the insured, the balance of the year's premiums, if any, and all other indebtedness to the company being first deducted. * * *

"In case this policy should be assigned or held as security, written notice thereof shall be given to the company and due proofs of interest produced with proofs of death."

It also refers to the mortgage as follows:

"With a mortgage given in connection with this policy securing the first five notes."

It is admitted that Mrs. Vogle and her husband, before his death, paid all the premiums, and that there was due when the bill was filed the sum of $3,500 secured by the mortgage, to be paid to the company, and the $3,500 under the policy, which was in the hands of the company, and could be applied by it upon the mortgage debt. Mrs. Vogle claimed that it should be so applied, and the company asserted a doubt about the matter. ,

Complainant filed a bill of complaint, setting up the foregoing facts, and praying that the amount secured by the policy of insurance be decreed to be the primary fund for the payment of the mortgage debt.

The answer admits that the life-insurance policy was taken out as a security to the company, but denies the averment of the bill that such policy was to provide a primary fund for the payment of the debt. The answer avers that Jonas O. Hoover, as executor, claims to be the owner of the policy under an assignment to Cora B.

Hoover (the date of which is not given); avers that Hoover has instituted suit upon the policy in Cook county, Ill., and claims his assignment to be prior to the alleged assignment to William H. Vogle. The answer prays that Hoover and complainant may be required to interplead.

The answer of complainant, to so much of defendant's answer as is in the nature of a bill of interpleader, contains a demurrer clause. On the hearing the defendant's prayer for an interpleader was denied, and complainant was granted the relief prayed. Defendant has appealed.

*M. L. Howell*, for complainant.

*Harsen D. Smith*, for defendant.

MONTGOMERY, J. (*after stating the facts*). Some criticism is made of the terms of the decree, as it affects the conflicting interests of complainant and the creditors of William H. Vogle, but as the decree fully protects the interest of the insurance company, as against representatives of the Vogle interests, it is enough to say that defendant has no ground for complaint of the decree in respect to the disposition of the fund. The only question with which the defendant is concerned is whether it was entitled to insist upon an interpleader. The defendant was not entitled to maintain a bill of interpleader unless it fairly appears that, without its fault, it is placed in a position where it is impossible to decide safely between adverse claimants. *Bedell* v. *Hoffman*, 2 Paige (N. Y.), 199; *Michigan & Ohio Plaster Co.* v. *White*, 44 Mich. 25.

In this case the record shows that by the express terms of the policy the defendant was entitled to withhold from the assured or his assignees the amount of any indebtedness to the company. This reservation of right was sufficiently broad to cover the amount due on this mortgage in the absence of any facts showing any right in equity on the part of an assignee to insist upon some other disposition of the fund. Nothing of that nature is averred or proved. On the contrary, the Vogles by payments of the premium

have kept the policy in force from 1893 to the date of Shriner's death; the later payments being made under what may well be called an assurance that the policy would pay off the mortgage. See letter of May 3, 1901. The equities appear to be with complainant.

The decree is affirmed, with costs.

CARPENTER, OSTRANDER, HOOKER, and MOORE, JJ., concurred.